UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JIAN-MING "SCOTT" ZHAO,

Plaintiff,

v.

RELAYRIDES, INC., et al.,

Defendants.

Case No. 17-cv-04099-JCS

**ORDER DENYING MOTION TO REMAND WITHOUT PREJUDICE**

Re: Dkt. Nos. 17, 22

## I.    INTRODUCTION

Plaintiff Jian-Ming "Scott" Zhao filed the initial complaint in this action in California Superior Court, San Mateo County, on November 14, 2016. He named as defendants RelayRides, Inc., Sphere Risk Partners, and Turo Inc. Defendants filed a notice of removal in this Court on July 20, 2017 after Zhao filed an amended complaint in state court that was deemed served on July 13, 2017. Defendants removed the action pursuant to 28 U.S.C. § 1332, as amended by the Class Action Fairness Act ("CAFA"). Zhao now brings a Motion to Remand ("Motion") in which he asserts that the removal was untimely and that CAFA's $5 million amount-in-controversy requirement is not met. A hearing on the Motion was held on December 8, 2017. For the reasons stated below, the Court concludes that further discovery is required to determine whether with Court has jurisdiction under CAFA. Accordingly, the Motion is DENIED without prejudice to bringing a renewed motion after the parties have had an opportunity to conduct limited jurisdictional discovery.[1]

_____

[1] The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c).

## II.    BACKGROUND

### A.    Procedural Background

#### 1.  The Parties

In the Complaint, Zhao alleges that he is a resident of San Francisco, California. Complaint ¶ 1.  According to the Notice of Removal, RelayRides, Inc. ("RelayRides") changed its name to Turo Inc. ("Turo") in November 2015.  Notice of Removal ¶ 4.  Turo is a Delaware corporation with its principal place of business in San Francisco, California.  *Id.*  Defendant Sphere Risk Partners is a Pennsylvania corporation with its principal place of business in Media, Pennsylvania.[2]  *Id.*  ¶ 5.

#### 2.  The Complaint

In the initial complaint ("Complaint"), Zhao alleged that Defendant RelayRides rents vehicles through an "online marketplace" that allows owners of vehicles to list their vehicles on its website ("Website").  Complaint ¶ 11.  Through the Website, customers can select and rent from the owner a listed vehicle, with RelayRides retaining 25% of the rental price.  *Id.*  According to Zhao,  RelayRides "represents that it verifies that the driving history of every customer meets strict standards."  *Id.*  He alleged that "RelayRides promises that the [owner's] vehicle is covered by RelayRides' [  ]$1,000,000 promise of insurance."  *Id.*

Zhao alleged that he rented his 350 Nissan Z through RelayRides and that the customer who rented it drove the car off the road in a single car accident that "resulted in the total loss" of the car.  *Id.* ¶ 10.  Zhao sought coverage for the loss through Sphere Risk Partners, which allegedly handled claim processing for RelayRides, but coverage was denied.  *Id.*  ¶¶ 37-38.

Zhao asserted the following claims in his Complaint: 1) fraud based on allegations that Defendants "deceptively misrepresented  . . . to Plaintiff, and similarly situated persons, that 'your

---

[2] In both the original Complaint and the First Amended Complaint, Zhao alleged on information and belief that RelayRides was a corporation with its principal place of business in San Francisco, California and that Sphere Risk Partners is a business entity of unknown form that does business in San Mateo, California.  Complaint ¶¶ 3-4; FAC ¶¶ 9-10.  Zhao does not dispute, however, Defendants' representation in the Notice of Removal that RelayRides changed its name to Turo and that Turo is, in fact, a Delaware corporation with its principal place of business in San Francisco, California.  Nor does he dispute that Defendant Sphere Risk Partners is a Pennsylvania corporation with its principal place of business in Media, Pennsylvania.

car is covered by our $1,000,000 liability policy during every rental[;]'" 2) unfair business practices in violation of California Business and Professions Code section 17200 ("17200 claim"); 3) bad faith – breach of covenant of good faith and fair dealing; and 4) promissory estoppel. In connection with his fraud claim, Zhao sought exemplary and punitive damages under California Civil Code section 3294 on the basis that Defendants acted "despicably" and "fraudulently."

Zhao brought the 17200 claim "in his individual capacity, on behalf of all persons similarly situated," asserting that "a representative action is necessary to prevent and remedy the deceptive, unlawful, and unfair practices" alleged in the Complaint. *Id.* ¶ 29. He further alleged that he brought the claim on behalf of two classes, alleging as follows:

> . . . The first class that plaintiff represents is composed of all persons who [ ] owned a vehicle which was listed on RelayRides's marketplace, but was denied coverage, or not fully covered for damages, after a customer damaged the owner's vehicle, wherein the denial was not based on an express policy exclusion. The persons in the class are so numerous that joinder of all such persons is impracticable and that the disposition of their claims is a benefit to the parties and to the court.

*Id.* ¶ 30. He further alleges:

> . . . The second class that plaintiff represents is composed of all persons who [ ] owned a vehicle which was listed on RelayRides's marketplace, that paid out of pocket expenses after the owner's vehicle was damaged during a rental period. The persons in the class are so numerous that joinder of all such persons is impracticable and . . . the disposition of their claims is a benefit to the parties and the court.

*Id.* ¶ 31.

Zhao's Complaint did not state that it was a class action in the caption of the complaint. Nor did the Complaint reference California's class action statute, Code of Civil Procedure section 382. In the Prayer section of the Complaint, Zhao did not specify any dollar amounts in connection with his requests for damages, restitution or disgorgement. He did, however, seek restitution "to plaintiff and each other member of the class . . . of all sums unlawfully collected by defendant from the plaintiffs and other members of the class." Similarly, he sought "disgorgement of all proceeds collected from plaintiff and each other member of the class . . . of all sums unlawfully collected by defendant from the plaintiffs and other members of the class." Zhao also

sought attorneys' fees and costs, injunctive relief and punitive damages.

The Complaint was served on Sphere Risk Partners on December 27, 2016 and on

RelayRides and Turo on January 23, 2017. Henderson Decl., Exs. 1, 2. [3]

### 3. Subsequent State Court Proceedings and Communications Between the Parties

On February 7, 2017, Defendants' counsel sent a letter to Zhao's counsel listing what they

asserted were deficiencies in Zhao's claims and offering to settle the case for $2,500. Chiari

Decl., Ex. 1 at pages 5-9. In connection with the 17200 claim, Defendants stated:

> It appears that your client is attempting to assert a representative action under the UCL without asserting class allegations. The caption is not styled as a class action, the civil cover sheet states expressly that this action is not a class action, is not complex, and the complaint fails to allege facts required by California Code of Civil Procedure 382. Private attorney general actions under the UCL, however, have been prohibited since the passage of Proposition 64 in 2003. *See* Bus. & Prof. Code§§ 17203; 17204 (prohibiting private attorney general actions, i.e. actions on behalf of the general public, and requiring private plaintiffs to comply with California Code of Civil Procedure section 3 82); see also *McAdams v. Monier*, 182 Cal . App. 4th 174, 190 (2010) ("Under Business and Professions Code section 17203 ... Plaintiff must ... comply with the class action requirements specified in Code of Civil Procedure section 382"). As pleaded, the "representative" allegations would not withstand demurrer or a motion to strike.

*Id.*

On February 10, 2017, Zhao responded in a letter stating that Defendants' legal arguments

were "misplaced" and asserting that Zhao's monetary damages were "significant." *Id.*, Ex. 2 at

pages 22-23. In particular, the letter states as follows:

> Our client's monetary damages are significant. Mr. Zhao's vehicle was a total loss. The repair estimate was $16,293 for his 2006 Nissan 350Z. Mr. Zhao also lost income. Your client's website's income calculator estimates that Mr. Zhao would have earned $7,334.00 a year, based on a low estimate car value of $16,000.00 rented 20 days per month. Mr. Zhao listed a Nissan 350Z (the sole purpose of having the car was to list it on RelayRides) to make money, and he had already earned $138.50 before the incident. He had rented his car a total of 3 days within a one week period. Over a two year time period, the loss equals $14,668.00. He also incurred out of pocket

---

[3] Although the Motion states that service on Sphere Risk Partners was on December 28, 2016, the Proof of Service attached to the Henderson Declaration reflects that the Complaint was actually served the day before that.

expenses. Thus, a conservative estimate of Mr. Zhao's damages equals $30,981.00. To account for punitive damages for your client's fraudulent acts, we multiply $30,980.00 by 10 to get $309,800.00. Put simply, the total recovery that Mr. Zhao may obtain is over $300,000.00. Attorneys['] fees would be extra -- likely an additional percentage (40% additional) of the gross amount.

*Id*.[4]

Sphere Risk Partners answered the Complaint on February 27, 2017. Docket No. 1-2 at pages 54-59.

On March 8, 2017, Turo and RelayRides brought a Motion to Compel Arbitration based on an arbitration clause that was added to their Terms of Service in November 2015 ("the November 2015 arbitration clause"), when RelayRides changed its name to Turo. *See* Docket No. 1-2 at pages 72-96. The Superior Court denied the motion on April 18, 2017. *Id*. at pages 295, 405.

A Case Management Conference was held on April 26, 2017. *Id*. at page 4. According to Zhao's counsel, at the Case Management Conference he "informed the Court that he intended to have the case be designated as complex because there were class claim allegations [but] Relyrides said it would oppose [plaintiff's request] because the class claims were not sufficiently pled." Docket No. 1-2 at 318. At some point, the parties stipulated to mediation, signing a stipulation describing the "Case Type" as "Fraud, Bad Faith, Class Claims." *Id*. at 311.[5]

Following the Case Management Conference, the parties engaged in discussions about the scope of Zhao's claims and the possible filing of an amended complaint by Zhao. *See id*. at pages 422-427; Henderson Decl., Exs. 4-10. With respect to whether the November 2015 arbitration clause would limit the scope of Zhao's 17200 claim, Zhao stated in a May 1, 2017 Letter as follows:

---

[4] Although these communications were made in the context of settlement negotiations, the parties have stipulated that the Court may consider them to determine whether removal of the action was proper. *See Cohn v. Petsmart, Inc*., 281 F.3d 837, 840 (9th Cir. 2002)(concluding that Fed.R.Evid. 408 does not prohibit the use of settlement offers in determining the amount in controversy and explaining that Rule 408 disallows use of settlement letters only to prove "liability for or invalidity of the claim or its amount.").

[5] The stipulation is signed but not dated. Based on the state court docket sheet, it appears that it was submitted by the parties on June 9, 2017 and approved on June 27, 2017. Notice of Removal, Docket No. 1-2 at 5.

> We also discussed the class claims. You said that our class claims would be restricted. I agreed. I believe that any claims that accrued after November 7, 2015, *i.e.*, date of updated [Terms of Service] should be excluded. I also believe some limited discovery on determining the scope of the class(es) is appropriate. Of course, this issue would best be handled by the Judge handling complex matters. Moreover, the Judge would be familiar with the class claim issues which will need to be addressed before a Mediation can be scheduled.

Henderson Decl., Ex. 4.

On May 9, 2017, Defendants' counsel sent a letter to Zhao's counsel stating, "As I understand, Plaintiff is asking that Defendants stipulate to an amended complaint that more clearly articulates class allegations." *Id.*, Ex. 5. Defendants further stated that they would need to review the proposed amended complaint before they could decide whether they would agree to such a stipulation. *Id.*

On May 17, 2017, Zhao's counsel sent Defendants' counsel a proposed stipulation, along with a proposed First Amended Complaint. *Id.*, Ex. 7. The stipulation stated, in part,

> WHEREAS on November 14, 2016, Plaintiff Jian-Ming "Scott" Zhao, filed a Complaint against Defendants that include allegations on behalf of class members;
>
> AND WHEREAS Defendants have raised issues on whether Plaintiff Jian-Ming "Scott" Zhao intends to bring a class action lawsuit;
>
> AND WHEREAS Plaintiff Jian-Ming "Scott" Zhao seek to clarify the allegations in the Complaint to allege class claims . . .
>
> IT IS HEREBY AGREED that the Court may issue the stipulated order as set forth below.

*Id.* Defendants responded with a revised proposed stipulation in which they removed the references to Zhao's original class allegations and his wish to "clarify" that he was asserting class claims, replacing this language with the clause "AND WHEREAS Plaintiff Jian-Ming 'Scott' Zhao seeks to amend the allegations in the complaint to include and add class action claims against Defendants." *Id.*, Ex. 10.

Zhao agreed to the proposed changes to the stipulation on June 5, 2017 and returned the draft stipulation to Defendants' counsel. *Id.*, Ex. 11. Defendants, however, did not sign the stipulation, responding that they had understood the amended complaint would contain a date

1    restriction on the "class claims," which it did not. *Id.*, Ex. 12. At that point, Zhao's counsel

2    clarified that Zhao did not intend to limit the class claims based on the November 2015 arbitration

3    clause "before conducting limited discovery and hav[ing] the issue handled by a Judge." *Id.*, Ex.

4    13.

5        Zhao filed a motion for leave to file his First Amended Complaint on June 21, 2017.

6    Docket No. 1-2 at pages 5, 312-340.[6] Subsequently, Defendants agreed to sign the stipulation

7    allowing amendment using the language proposed by Defendants, and that stipulation was filed on

8    July 13, 2017. Request for Judicial Notice in Support of Motion to Dismiss, Ex. S. On July 14,

9    2017, the Court signed the stipulation and the First Amended Complaint was deemed served on all

10   parties. Docket No. 1-2 at page 5.

### 4. The First Amended Complaint

12       In the First Amended Complaint, Zhao invoked California Code of Civil Procedure section

13   382 and included a new section entitled "Class Action Allegations." In that section he described

14   the same two classes he had described in the initial complaint, and he further alleged that there

15   were "hundreds of members, if not thousands of members" in these classes. FAC ¶ 36. The First

16   Amended Complaint alleges that Zhao's "car was damaged during the rental period when a renter

17   drove off the road causing a single car accident in San Mateo County, which resulted in the total

18   loss of Plaintiff's vehicle." *Id.* ¶ 8. It does not include any specific allegations as to the value of

19   Zhao's vehicle. Like the original Complaint, the Prayer in the First Amended Complaint seeks

20   economic and "special and incidental" damages, restitution and disgorgement of proceeds,

21   punitive damages, attorneys' fees and costs and injunctive relief. Also like the initial complaint,

22   the Prayer in First Amended Complaint does not set forth any dollar amounts in connection with

23   these remedies. Nor does Zhao specify the multiplier he is seeking in connection with his request

24   for punitive damages. The First Amended Complaint asserts the same four claims Zhao asserted

25   in his original Complaint.

26

27

---

28   [6] Although Zhao states in his brief that the motion for leave was filed on June 20, 2017, the state court docket sheet reflects that the motion was filed on June 21, 2017.

### 5. The Notice of Removal

Defendants filed their Notice of Removal in this Court on July 20, 2017. In the Notice of Removal, Defendants asserted that the action was removable under CAFA because: 1) the First Amended Complaint is styled as a class action under California Code of Civil Procedure section 382; 2) the First Amended Complaint describes two classes and alleges that "there are hundreds of members, if not thousands of members" in the two classes, thus satisfying CAFA's requirement that the class must have over 100 members; 3) there is minimal diversity because Sphere Risk Partners is a citizen of Pennsylvania while Turo is a citizen of Delaware and California; and 4) the $5 million amount-in-controversy requirement is met. Notice of Removal at 3-8.

In support of their assertion that the amount-in-controversy requirement is met, Defendants rely on the following estimated amounts: 1) classwide economic damages of $3,000,000 (based on an assumed class size of 200) or $5,010,00 (based on an assumed class size of 334) calculated using the amount of Zhao's economic loss as reflected in Defendants' records (approximately $15,000) and assuming the same loss for each class member based on the allegation that Zhao's claims were "typical" of class members' claims; 2) attorneys' fees in the amount of $1,252,500, that is, 25% of the estimated damages of $5,010,000 in economic damages, based on the 25% benchmark for common fund cases used in the Ninth Circuit; 3) punitive damages in the amount of $5,010,000 based on the assumption that if punitive damages are awarded they will be at least equal to actual economic damages. *Id*. at 6-8.

Defendants also asserted that removal of the case was timely because they filed the Notice of Removal within thirty days of the date on which the First Amended Complaint was deemed served, July 13, 2017. *Id*. at 9.

**B.    The Motion[7]**

In the instant Motion, Zhao asks the Court to remand this action to California state court because: 1) the removal was untimely; 2) Defendants have not demonstrated that CAFA's $5 million amount-in-controversy requirement is met; and 3) Defendants waived their right to remove by filing a motion to compel arbitration in state court.   In addition, Zhao asks the Court to award $11,860 in attorneys' fees  and costs incurred in connection with Defendants' removal to federal court pursuant to 28 U.S.C. § 1447(c).

With respect to the timeliness of the removal, Zhao contends the thirty-day time limit for removal began to run when the original complaint was filed because all of the facts were known at that time regarding the citizenship of the parties, the Complaint clearly stated that class claims were being asserted, and Defendants possessed all of the relevant information necessary to determine whether the amount-in-controversy requirement was met.  Motion at 11-13.

In the alternative, Zhao argues that even if it was not clear from the initial complaint that the action was potentially removable (because the Complaint did not allege the class size or the amount in controversy), the thirty-day deadline was triggered when Zhao provided Defendants with an "amended pleading" or "other paper" under 28 U.S.C. § 1446(b)(3) putting Defendants on notice that the action was removable.  Reply at 5-7.  In particular, Zhao points to his February 10, 2017 letter to Defendants stating that his individual estimated damages were $30,981 and to the proposed stipulation and First Amended Complaint Zhao sent to Defendants on May 17, 2017.  *Id.* at 6-7.  To the extent the Complaint was indeterminate as to jurisdiction, Zhao argues, the facts establishing CAFA jurisdiction were clear to Defendants no later than May 17, 2017, requiring Defendants to file their notice of removal no later than June 16, 2017.  *Id.* at 7.

---

[7] After Zhao filed his Reply, Defendants filed a motion for leave to file a surreply, arguing that Zhao had raised "new" arguments in his Reply.  Docket No. 22. Zhao, in turn, filed a brief opposing the request, along with a response to the proposed surreply.  Docket Nos. 23, 23-1.   The Court finds that the "new" arguments in Zhao's Reply are more properly characterized as responses to arguments made by Defendants in their Opposition.  The Court notes in particular that Defendants offered new evidence to support the amount-in-controversy requirement that they did not provide to the Court when they filed their Notice of Removal and which Zhao therefore could not have addressed in the original Motion.  Nevertheless, the Court will exercise its discretion to grant Defendants' request to file a surreply and will also consider Zhao's response to the surreply.

Even if the Notice of Removal was timely, Zhao contends, Defendants did not meet their burden in the Notice of Removal of establishing that the amount-in-controversy requirement was met. Motion at 14-20. First, Zhao argues, the amount of economic damages Defendants estimated was based on unsupported assumptions about the size of the class and the amount of the denied claims. *Id*. at 14. Zhao rejects Defendants' reliance on the assumption that the amount of each class member's denied claim was the same as Zhao's losses, which Defendants based on Zhao's allegation that his claim was typical of the class members' claims. According to Zhao, Courts have rejected similar reasoning, finding that an allegation of typicality does not mean that the *amount* of each class members' damages is the same. *Id*. at 15 (citing *Carranza v. Nordstrom, Inc*., 2014 U.S. Dist. LEXIS 172307, at *26-27 (C.D. Cal. Dec. 12, 2014)). Zhao argues further that the number of class members used by Defendants to support the amount in controversy is derived merely by dividing the $5 million amount by the assumed loss for each class member and is supported by no evidence showing that Defendants' assumptions as to the number of class members are reasonable. *Id*. at 16.

Zhao argues that Defendants need not have relied upon these unsupported assumptions as to both the number of class members and the amount of their denied claims because Defendants already knew how many claims they had denied and the amounts of those claims. *Id*. In failing to proffer any evidence in the Notice of Removal to show that the amount-in-controversy requirement was met, Zhao argues, Defendants impermissibly failed to meet the burden of persuasion that falls upon the party that invokes federal jurisdiction. *Id*. (citing *Brill v. Countrywide Home Loans, Inc*., 427 F.3d 446, 447-48 (7th Cir. 2005)).

Zhao also challenges the evidence that Defendants offer in support of their Opposition to show that the amount-in-controversy requirement is met. As discussed below, in opposing Zhao's Motion, Defendants submit a declaration by Turo's president, Alex Benn, to establish the actual number of class members and amount of the class members' denied claims. In that declaration, Benn states that he reviewed Turo's "records to determine the breakdown of the number of claims regarding vehicle damages that were denied and the monetary amount of the average paid and unpaid claims." Benn Opposition Decl. ¶ 2. According to Benn, his "research revealed that, since

10

November 2012, over 3,000 claims regarding vehicles damaged during the course of rentals from Turo have been denied, the average claim paid is over $2,000 and the average unpaid claim is approximately $1,200." *Id.* ¶ 3.

Zhao argues Benn's declaration does not constitute "summary judgment type evidence" that is required to support CAFA jurisdiction because it lacks adequate foundation. Reply at 8. In particular, he argues that the declaration provides "no factual information showing Mr. Benn's job responsibilities included reviewing denied claims" and no specific facts about the reasons for the denials of coverage. *Id*. at 8-9. Zhao also asserts that the amount of paid claims is irrelevant. *Id.* at 8 n. 7. Further, he argues that the amounts provided by Benn are misleading because they include claims made after November 2015, when the updated Terms of Service added an arbitration clause. *Id*. at 9. To the extent that Defendants have argued that class allegations are barred after November 2015, Zhao asserts, the evidence regarding the amount in controversy should be limited as well. *Id*.

With respect to consequential damages, which Defendants did not include in their Notice of Removal but contend in their Opposition would be substantial, Zhao argues that there is a cap of $100 on consequential damages in the RelayRides contract and therefore, that this component of damages would be insignificant. Reply at 10. He also argues that the Defendants' assumptions about lost income (discussed below) are speculative and unreasonable. *Id*.

With respect to Defendants' inclusion of attorneys' fees in their Notice of Removal to support the amount in controversy, Zhao argues that only the attorneys' fees incurred at the time of removal should be considered, though he acknowledges that there is a split of authority on that question. Motion at 17. Even if attorneys' fees incurred throughout the life of the case are included in the amount-in-controversy calculation, Zhao contends, the assumption that those fees will be 25% of economic damages is entirely speculative. *Id.* Moreover, as Defendants have offered no evidence of classwide damages, their calculation of attorneys' fees as a percentage of those damages also falls short, Zhao asserts. *Id*. at 18.

Zhao also challenges Defendants' inclusion of projected punitive damages in their calculation of the amount in controversy. *Id.* Zhao does not dispute that punitive damages should

be considered when they are authorized by statute, but argues the amount should not be aggregated because the damages to which Zhao is entitled are specific to his particular claim. *Id*. at 19. Even if a potential award of punitive damages is aggregated, Zhao argues, such an award is based on the underlying economic damages and here, Defendants' calculation of classwide economic losses is speculative, thus also rendering their inclusion of punitive damages speculative. *Id*.

Zhao also argues that Defendants waived any right they may have had to remove the action to federal court when they brought a motion to compel arbitration in state court. *Id*. at 20. According to Zhao, in filing that motion, Defendants indicated that they had submitted to the jurisdiction of the state court. *Id* at 20-21 (citing *California Republican Party v. Mercier*, 652 F. Supp. 928, 931 (C.D. Cal. 1986); *Bolivar Sand Co., Inc. v. Allied Equipment, Inc.*, 631 F. Supp. 171 (W.D. Tenn. 1989); *McKinnon v. Doctor's Assoc., Inc*. 769 F.Supp.216, 217 (E.D. Mich. 1991)).

Finally, Zhao asks the Court to award attorneys' fees for the costs associated with the instant motion pursuant to 28 U.S.C. § 1447(c), in the amount of $11,860. *Id*. at 22.

In response, Defendants contend their removal was timely, that they have demonstrated that the amount-in-controversy requirement is met and that they did not waive their right to remove by filing a motion to compel arbitration in state court.

With respect to the timeliness of removal, Defendants contend the initial complaint did not start the thirty-day limitation period for removal because it was "not pled as a class action at all" and contained only a "single representative claim" that was "abolished more than 13 years ago." Opposition at 1-2. Defendants further assert that the Complaint did not start the clock running because it did not satisfy the requirements for pleading a class action under California Code of Civil Procedure section 382. *Id*. at 2. According to Defendants, the conclusion that the Complaint was not a class action is supported by the fact that Zhao sought to amend the complaint to add class allegations. *Id*. at 2. Defendants also point to the statement in the stipulation that in seeking to file the First Amended Complaint, Zhao sought to "include and add class action claims." *Id*. at 6-7.

In addition to arguing that the Complaint was not removable because the 17200 claim was

1   not cognizable, Defendants assert that the Complaint was indeterminate as to removability because

2   the allegations were not sufficient to show that CAFA's numerosity and amount-in-controversy

3   requirements were met. *Id*. Nor did Defendants have an obligation to conduct their own

4   investigation to determine if these requirements were met, they argue. *Id*. at 9-10 (citing *Roth v.*

5   *CHA Hollywood Medical Center, L.P.*, 720 F.3d 1121, 1125 (9th Cir. 2013); *Harris v. Bankers*

6   *Life and Casualty Co*., 425 F.3d 689, 693-94 (9th Cir. 2005)). Defendants argue that it was only

7   when the First Amended Complaint was deemed filed, on July 13, 2017, that the removability of

8   the action was ascertainable and therefore, that the Notice of Removal filed on July 20, 2017 was

9   timely.

10      Defendants also reject Zhao's argument that the February 10, 2017 letter was an "other

11  paper" that started the removal clock because it stated the specific damages Zhao allegedly

12  suffered. Surreply at 2. Defendants argue that this argument "of course, ignores the fact that

13  [Zhao's] initial Complaint was not a class action at all." *Id*. Similarly, Defendants reject Zhao's

14  assertion that the thirty-day time limit began to run when he provided his proposed First Amended

15  Complaint to Defendants, on May 17, 2017. *Id*. Defendants contend circulation of a proposed

16  pleading does not trigger any obligation to remove and that it is only after the pleading has

17  become operative that it gives rise to such an obligation. *Id*. at 3 (citing *Torres v. Chevron U.S.A.,*

18  *Inc.*, No. C 04–2523 SBA, 2004 WL 2348274, at *2 (N. D. Cal. Oct. 18, 2004); *Jones v. G2*

19  *Secure Staff, LLC*, V 17–00061 SJO (SSx), 2017 WL 877293, at *3 (C.D. Cal. Jun. 3, 2017); *Hess*

20  *v. Bonneville Billing and Collection*s, No. 3:15–CV–05158–RBL, 2015 WL 3569230, at *2 (W.D.

21  Wash. Jun. 5, 2015); *Lerma v. URS Federal Support*, No. 1:11–cv–00536–LJO–MJS, 2011 WL

22  2493764, at *5 (E.D. Cal. Jun. 22, 2011); *Brewer v. Hatton*, Case No. 17-cv-02900-JSC, 2017 WL

23  3635824, at *1 (N.D. Cal. Aug. 24, 2017)).

24      With respect to the amount in controversy, Defendants contend they were not required to

25  research and prove Zhao's case and could rely on the allegations in the First Amended Complaint

26  (including the allegation that Zhao's claim was typical of the class members' claims) to establish

27  CAFA jurisdiction in the Notice of Removal. Opposition at 16 n. 17. Nonetheless, they argue

28  that the preponderance of the evidence shows that this requirement is met. *Id*. They point to the

13

1    Benn declaration discussed above, stating the number and average amount of paid and unpaid

2    claims, and also cite statistics published by the U.S. Department of Transportation National

3    Highway Traffic Safety Administration ("NHTSA"), for which they request judicial notice.[8] In

4    particular, according to Defendants, a NHTSA publication entitled "The Economic and Societal

5    Impact of Motor Vehicle Crashes," which analyzed the societal impact of motor vehicle crashes in

6    2010, found that the "unit" cost for vehicle collision damage ranged on average from $2,444 per

7    vehicle for property damage only collisions to $16,328 for collisions that resulted in severe injury

8    to the occupants. *Id.* at 15 n. 15 (citing RJN, Ex. A at 12, table 1-2). Using the data in the Benn

9    Opposition Declaration (at least 3,000 unpaid claims averaging $2,000 in losses), Defendants

10   calculate the classwide economic losses due to unpaid claims as at least $3,600,000. *Id.*[9]

11   　　Defendants reject Zhao's argument in his Reply that the Court should not consider claims

12   that were denied after November 2015, when the new Terms of Service Agreement came into

13   effect requiring arbitration. Surreply at 4-6. They argue that for the purposes of determining the

14   amount in controversy, the Court must consider the claims as pled and that Zhao may not rewrite

15   his claims to avoid federal jurisdiction. *Id.* They also point out that the parties discussed whether

16   a date cut-off would be added in the First Amended Complaint and Zhao explicitly rejected this

17   request from Defendants, preferring to define the class broadly and allow a judge to decide the

18   scope of the class. *Id.*

19   　　Defendants further contend that to the extent Zhao seeks consequential damages, the

20   estimated lost income for class members would be substantial. Opposition at 17-18. Citing

21   median income in various counties in this district, Defendants contend lost income alone would be

22   approximately $2,217 per class member, though they acknowledge that this number would vary

23

24   ───────────────
[8] Defendants request judicial notice of a NHTSA Report under Rule 201(b)(2) of the Federal
25   Rules of Evidence on the basis that it is a record of an administrative body. Defendants' Request
     for Judicial Notice ("RJN") at 1 & Ex. A. In addition, they ask the Court to take judicial notice of
26   statistics about median incomes in various counties in the Northern District of California that are
     published by the U.S. Department of Housing and Urban Development ("HUD") on a publically
27   accessible website. *Id.*, Ex. B. Zhao does not object to the request, which the Court grants.
     [9] Defendants further state that "[i]f the amount in controversy is based on paid claims, then the
28   damages amount to $6,000,000." *Id.* at 16. Defendants offer no reasoning explaining why or how
     the amount of the claims that were paid would be relevant to the amount in controversy.

14

depending on where the class member lived.  *Id*. at 18 (citing RJN, Ex. B).  Defendants also note that class members might be able to prove other consequential damages in addition to lost income such as lost business opportunities.  *Id.*

With respect to attorneys' fees, Defendants contend the better reasoned case law has found that fees incurred over the life of the case should be considered in the amount-in-controversy inquiry.  *Id*. at 18-20.  Moreover, they assert, their estimate of fees as 25 % of economic damages has been found to be reasonable in the Ninth Circuit.  *Id*. at 19. In addition, class members would be entitled to so-called *Brandt* fees, Defendants contend, because under California law, attorneys' fees for the successful prosecution of a bad faith action are damages that necessarily must be included in the calculation of the amount-in-controversy.  Id. at 20 (citing *Brandt v. Superior Court*, 37 Cal. 3d 813 (1985);  *Cain v. Hartford Life and Accident Insurance Company*, 890 F. Supp. 2d 1246, 1250 (C.D. Cal. 2012)).  According to Defendants, *Brandt* fees are a component of economic damages and are also taken into consideration in determining the amount of punitive damages.  *Id*. (citing *Nickerson v. Stonebridge Life Insurance Company*, 63 Cal. 4th 363, 368 (2016)).

Defendants also argue that Zhao's request for punitive damages must be considered in determining the amount in controversy and that an estimate of punitive damages equal to projected economic damages is conservative.  *Id*. at 21.  Defendants reject Zhao's assertion that punitive damages should not be aggregated, asserting that it is clearly established under CAFA that punitive damages are aggregated.  *Id*. at 21 (citing *Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1348 (2013);  *Millar v. Bank of America, N.A*., No. 3:15-cv-03320-LB, 2015 WL 5698744, at *4 (N.D. Cal. Sept. 29, 2015); *Yeroushalmi v. Blockbuster, Inc*., No. CV 05-225-AHM(RCX), 2005 WL 2083008, at *2 (C.D. Cal. Jul. 11, 2005); *Bayol v. Zipcar, Inc*., No. 14–cv–02483–TEH, 2015 WL 4931756, at *9 (N.D. Cal. Aug. 18, 2017)).

Taking into account all of the amounts discussed above, Defendants argue that the $5 million amount-in-controversy requirement for CAFA jurisdiction is easily satisfied.  *Id*. at 22-23.

Defendants reject Zhao's assertion that they waived their right to remove the action by bringing a motion to compel arbitration in state court.  *Id*. at 23-24.  Zhao's argument fails,

15

1  Defendants assert, because at the time they filed their motion to compel arbitration the operative

2  complaint did not reveal that the action was removable.  *Id*.

3        Finally, Defendants argue that the Court should not award Zhao's attorneys' fees even if it

4  finds the case was improperly removed because Defendants removal of the action was objectively

5  reasonable.  *Id*. at 25.

6  **III.    ANALYSIS**

7        **A.    Legal Standard**

8        Under 28 U.S.C. § 1441, a defendant may remove a civil action from state court to federal

9  district court if the district court would have had subject matter jurisdiction over the action had it

10  been originally filed in that court.  CAFA gives district courts original jurisdiction "of any civil

11  action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of

12  interest and costs, and is a class action in which . . . any member of a class of plaintiffs is a citizen

13  of a State different from any defendant," so long as "the number of members of all proposed

14  plaintiff classes in the aggregate is [not] less than 100."  28 U.S.C. §§ 1332(d)(2)(A), (d)(5)(B).   A

15  "class action" is defined as "any civil action filed under rule 23 of the Federal Rules of Civil

16  Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought

17  by 1 or more representative persons as a class action."  28 U.S.C. § 1332(d)(1)(B).

18        To remove a case from state court court, a defendant must file in the federal forum a notice

19  of removal "containing a short and plain statement of the grounds for removal."  28 U.S.C. §

20  1446(a).   There is no presumption against removal under CAFA, "which Congress enacted to

21  facilitate adjudication of certain class actions in federal court." *Dart Cherokee Basin Operating

22  Co., LLC v. Owens*, 135 S. Ct. 547, 554 (2014) (citing *Standard Fire Ins. Co. v. Knowles*, 568 U.S.

23  588, 595 (2013)).  Further, "a defendant's notice of removal need include only a plausible

24  allegation that the amount in controversy exceeds the jurisdictional threshold."  *Id*.   Under 28

25  U.S.C. § 1446(c)(2)(B),  where the amount in controversy is challenged, "both sides submit proof

26  and the court decides, by a preponderance of the evidence, whether the amount-in-controversy

27  requirement has been satisfied."  *Id*.   Nonetheless, the burden to establish removability remains

28  on the defendant under CAFA. *Abrego Abrego v. The Dow Chemical C*o., 443 F.3d 676, 684 (9th

Cir. 2006). Further, district courts in the Ninth Circuit have found that a plaintiff need not come forward with evidence that a case is not removable until a removing defendant has met its burden. *See Garcia v. Wal-Mart Stores Inc*., 207 F. Supp. 3d 1114, 1119 (C.D. Cal. 2016) ("the court is not aware of any authority—nor has defendant cited to any—stating that a plaintiff must submit evidence challenging the amount in controversy"); *Townsend v. Brinderson Corp*., No. CV 14-5320 FMO RZX, 2015 WL 3970172, at *3 (C.D. Cal. June 30, 2015) (noting that "neither *Dart Cherokee* nor [*Ibarra v. Manheim Investments, Inc*., 775 F.3d 1193 (9th Cir. 2015)] mandate that a plaintiff must always submit evidence challenging the amount in controversy" and concluding that those decisions require "a plaintiff to come forward with contrary evidence only when the removing defendant has first come forward with sufficient evidence to meet its initial burden.").

Under § 1446(b)(1) and (b)(3) "a defendant must remove a case within thirty days of receiving from the plaintiff either an initial pleading or some other document, if that pleading shows the case is removable." *Roth v. CHA Hollywood Med. Ctr., L.P*., 720 F.3d 1121, 1123 (9th Cir. 2013). These two thirty-day windows do not, however, "otherwise affect the time during which a defendant *may* remove." *Id*. Thus, in *Roth* the Ninth Circuit concluded that "§§ 1441 and 1446, read together, permit a defendant to remove outside of the two thirty-day periods on the basis of its own information, provided that it has not run afoul of either of the thirty-day deadlines." *Id*. at 1125. The Court in *Roth* reasoned as follows:

> For good reason, § 1446(b)(1) and (b)(3) place strict limits on a defendant who is put on notice of removability by a plaintiff. A defendant should not be able to ignore pleadings or other documents from which removability may be ascertained and seek removal only when it becomes strategically advantageous for it to do so. But neither should a plaintiff be able to prevent or delay removal by failing to reveal information showing removability and then objecting to removal when the defendant has discovered that information on its own. Similarly, a plaintiff's ignorance of the citizenship of would-be class members should not defeat removal if defendant independently knows or learns that information.

*Id*.

### B.    Whether Removal Was Timely

Zhao contends Defendants' removal was untimely either because his initial complaint triggered the first thirty-day deadline of 28 U.S.C. § 1446(b)(1) or because subsequent

17

communications with Defendants started the thirty-day clock under § 1446(b)(3). Based on the factual record that is currently before the Court, the Court concludes that Zhao is incorrect for the reasons stated below.

### 1. The First Thirty-Day Window (28 U.S.C. § 1446(b)(1))

Pursuant to § 1446(b)(1), "[t]he notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . ." While the application of this deadline is straightforward where it is apparent from the face of the complaint that the case is or is not removable, the analysis may be more difficult where the complaint is "indeterminate" as to jurisdiction, that is, where it "is unclear from the complaint whether the case is removable, i.e., the citizenship of the parties is unstated or ambiguous." *See Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 693 (9th Cir. 2005). In *Harris*, the Ninth Circuit explained that "notice of removability under § 1446(b) is determined through examination of the four corners of the applicable pleadings, not through subjective knowledge or a duty to make further inquiry." *Id*. at 694. The court further held that "the first thirty-day requirement is triggered by defendant's receipt of an 'initial pleading' that reveals a basis for removal. If no ground for removal is evident in that pleading, the case is 'not removable' at that stage." *Id.*

Defendants argue strenuously that the initial complaint did not start the first thirty-day deadline because while it included a "representative claim" it was not a "class action" for removal purposes. In particular, they assert that Zhao's 17200 claim is not cognizable because under California Proposition 64 he was required to comply with the requirements of California Code of Civil Procedure section 382 and he did not do so. This argument is unpersuasive. As noted above, CAFA defines a "class action" as "any civil action filed under rule 23 of the Federal Rules of Civil Procedure *or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action*." 28 U.S.C. § 1332(d)(1)(B) (emphasis added). Defendants have cited no authority that suggests that California Business and Professions Code sections 17200 *et seq.* is not such a law. The fact that Defendants may have a strong defense against Zhao's 17200 claim does not mean that the initial complaint was not a class

action for the purposes of CAFA. *See Zacharia v. Harbor Island Spa, Inc.*, 684 F.2d 199, 202 (2d Cir. 1982) (holding in diversity action that the district court erred in finding on summary judgment that there was a valid defense to any claim over $1,000 and then remanding sua sponte on jurisdictional grounds because the amount in controversy was not met, and observing that "the existence of a valid defense does not deprive a federal court of jurisdiction"). Indeed, it is clear from the face of the initial complaint that Zhao was seeking to assert claims on behalf of two classes, which he explicitly defined.

While the Court rejects Defendants' assertion that the Complaint did not articulate class claims, however, it agrees with Defendants that it did not reveal on its face that the action was removable under CAFA. In particular, the Complaint contained no specific allegations regarding the size of the two proposed classes (including whether there were more than 100 class members), or the amount of either Zhao's damages or the damages of the class as a whole.[10] It is possible that based on the classes defined in the Complaint Defendants could have determined the likely size of the class and the potential damages at stake. To do so, though, Defendants would have had to conduct their own internal investigation (as they eventually did in opposing the instant motion). *Roth* makes clear that where the jurisdictional facts are not contained in the initial pleading the first thirty-day deadline is not triggered even if a defendant could have discovered those facts through its own investigation. Therefore, the Court concludes that the first thirty-day deadline did not begin to run when Zhao filed the initial complaint.

### 2. The Second Thirty-Day Window (28 U.S.C. § 1446(b)(3))

Zhao contends that even if the initial complaint did not satisfy the requirements of 28 U.S.C. § 1446(b)(1), his February 10, 2017 letter setting forth the losses he had incurred and the proposed First Amended Complaint provided to Defendants on May 17, 2017 triggered the second thirty-day deadline, making the July 20, 2017 removal untimely. Again, the Court concludes that

---

[10] The Court notes that the allegations in the Complaint regarding the citizenship of the parties also did not reveal that CAFA's minimal diversity requirement was met because Zhao incorrectly alleged that all of the defendants were based in California. Defendants do not rely on this ground in support of their argument that federal jurisdiction was indeterminate in the initial complaint. As a practical matter, Defendants presumably knew where they were based and therefore were put on notice that there was minimal diversity between the parties when they received the Complaint.

United States District Court
Northern District of California

Zhao is incorrect.

As discussed above, in the February 10, 2017 letter to Defendants, Zhao stated that "a conservative estimate of [his] damages equals $30,981.00." An estimate of damages made in settlement negotiations may be considered in determining whether the amount-in-controversy requirement is met. *See Cohn v. Petsmart, Inc.*, 281 F.3d 837, 839-40 (9th Cir. 2002) ("A settlement letter is relevant evidence of the amount in controversy if it appears to reflect a reasonable estimate of the plaintiff's claim."). Here, however, the classes defined in the Complaint are not limited to individuals whose cars were totaled, as Zhao's was, but instead includes all individuals whose vehicles were "damaged" by a renter and who were "denied coverage" or were "not fully covered" for damages. *See* Complaint ¶¶ 30-31. Consequently, the damages that Zhao claimed in the February 10, 2017 letter do not allow for a determination of the overall damages potentially suffered by the class. This difficulty is compounded by the fact that the February 10, 2017 letter also makes no representations about the size of the class.[11] Therefore, the Court concludes that the February 10, 2017 letter did not start the clock on the second thirty-day time limitation.

Next, the Court considers whether the proposed First Amended Complaint that Zhao sent to Defendants on May 17, 2017 triggered the second thirty-day deadline under 28 U.S.C. § 1446(b)(3). The parties disagree on whether receipt of a *proposed* amended complaint can start the running of that deadline (as Zhao contends) or rather, whether the amended pleading triggers that deadline only when it is actually filed and becomes operative (as Defendants contend). The Court finds Defendants' position on that question to be unpersuasive because the cases on which they rely do not involve indeterminate complaints but rather, situations in which a plaintiff sought to amend to add a federal claim where there was none in the operative complaint, thereby giving rise to federal question jurisdiction under 28 U.S.C. § 1331. *See Torres v. Chevron U.S.A., Inc.,*

---

[11] As discussed below, the Court also does not find that the extrapolation of Zhao's damages to each class member based on his allegation that his claims are "typical" of class members (the basis for asserting that the amount-in-controversy requirement is met offered by Defendants in the Notice of Removal) is supported by the case law or that this approach gives rise to a plausible allegation of the amount of classwide economic losses.

20

No. 04-cv- 2523 SBA, 2004 WL 2348274, at *2 (N. D. Cal. Oct. 18, 2004) (holding that removal on the basis of federal claims asserted in motion to amend was premature where removal was based on federal question and prior complaint did not include any federal claims); *Jones v. G2 Secure Staff, LLC,* No. 17-cv-00061 SJO (SSx), 2017 WL 877293, at *2 (C.D. Cal. Jun. 3, 2017) (holding that delivery by email of proposed amended complaint adding federal claim to action in which no federal claims had been asserted did not trigger thirty-deadline for removal because until the amended complaint became operative there was no removal jurisdiction); *Hess v. Bonneville Billing and Collections*, No. 15-cv-05158-RBL, 2015 WL 3569230, at *2 (W.D. Wash. Jun. 5, 2015) (holding that the thirty-day deadline under 28 U.S.C. § 1446(b)(3) was not triggered when the plaintiff provided the defendant a proposed amended complaint adding a federal claim and stating that the defendant "could not have, and certainly was not required to, seek removal unless and until the amended complaint was operative"); *Brewer v. Hatton,* No. 17-cv-02900-JSC, 2017 WL 3635824, at *1 (N.D. Cal. Aug. 24, 2017) ("a proposed amended complaint that on its face would provide a basis for subject matter jurisdiction does not become removable until it becomes the operative complaint in the case."). [12]

The reasoning of the cases cited by Defendants is that there is no *contingent* federal jurisdiction and thus, a plaintiff's intention of adding a claim that will create federal jurisdiction is not a sufficient basis for removal where the state court has not yet granted leave to add such a claim. *See, e.g., Brewer v. Hatton*, No. 17-cv-02900-JSC, 2017 WL 3635824, at *1 (N.D. Cal. Aug. 24, 2017) ("Simply put, in federal court, there is simply no such thing as 'contingent' subject

---

[12]The single case Defendants cite that did not involve removal on the basis of an amended complaint that created removal jurisdiction by adding a federal claim is *Lerma v. URS Federal Support*, No. 1:11–cv–00536–LJO–MJS, 2011 WL 2493764, at *5 (E.D. Cal. Jun. 22, 2011). In that case, removal was based on diversity where the amended complaint gave rise to diversity jurisdiction because it named a new Defendant. In that context, the court found that the thirty-day deadline did not begin to run until the new defendant was formally served with the amended complaint (rather than when it received a courtesy copy) because a contrary result would fly in the face of the bedrock principle that "a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Lerma v. URS Fed. Support Servs*., No. 1:11-CV-00536-LJO, 2011 WL 2493764, at *4 (E.D. Cal. June 22, 2011)(quoting *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc*., 526 U.S. 344, 347, 119 S.Ct. 1322, 143 L.Ed.2d 448 (1999)). Here, Zhao did not add any defendant in his First Amended Complaint and therefore *Lerma* sheds no light on the issue before the Court.

matter jurisdiction.") (quoting *McDonough v. UGL UNICCO*, 766 F.Supp. 2d 544 (E.D. Pa. 2011)). The reasoning of these cases is entirely sound. It does not, however, apply under the circumstances here where the question is not when the action actually became removable but rather, when Defendants had sufficient *notice* that CAFA's requirements – here, the size of the class and the amount in controversy – were met. Unlike a case in which removal is based on the existence of a federal question, where there is no federal jurisdiction until a federal claim is actually asserted, in a case where the complaint is indeterminate, there *may* be federal jurisdiction regardless of whether or not the amended complaint ever becomes operative, as is evidenced by the fact that a defendant may remove to federal court based on its own investigation of the jurisdictional facts where the plaintiff does not include them in the complaint. In this situation, there appears to be no reason why receipt of a proposed amended complaint clarifying the jurisdictional facts associated with *existing* claims could not be considered an "other paper" under 28 U.S.C. § 1446(b)(3).[13]

The Court does not decide this question, however, because it concludes that Defendants' removal was timely for a different reason, namely that the First Amended Complaint, like the initial complaint, was indeterminate as to the amount of potential damages at stake and therefore did not start the second thirty-day time limit at all – either when Defendants received the proposed amended complaint in May or when it became operative in July. Although the First Amended Complaint added allegations to clarify that the proposed classes contained hundreds of members, thus establishing that the numerosity requirement was met, it did not include any factual allegations addressing the amount of classwide damages. Further, as discussed above, the class definitions (in both the initial complaint and the First Amended Complaint) are not limited to individuals whose cars were totaled and therefore, to the extent that Defendants were aware of the

---

[13] In one of the cases cited by Defendants, *Jones v. G2 Secure Staff, LLC*, the court found that a proposed amended complaint cannot be an "other paper" because § 1446(b)(3) "differentiates between an 'amended pleading' and 'other paper' as bases for removal." No. 17-cv-00061 SJO (SSx), 2017 WL 877293, at *2 (C.D. Cal. Jun. 3, 2017). That court did not explain, however, why it apparently concluded that a *proposed* amended pleading (which it found did not constitute an "amended pleading" under § 1446(b)(3)) could not fall into the category of "other paper." Therefore, the undersigned does not find the reasoning of *Jones* to be persuasive on this issue.

amount of Zhao's claimed individual losses as a result of his February 10, 2017 letter, those losses

did not provide a reasonable basis for determining classwide damages. *See Carranza v.*

*Nordstrom, Inc.*, No. EDCV1401699MMMDTBX, 2014 WL 10537816, at *10 (C.D. Cal. Dec.

12, 2014) (holding that calculation of the amount in controversy in a wage and hour class action

based on allegations relating to the amount of the plaintiff's  unpaid wages and overtime  and that

the plaintiff was "similarly situated" to other class members was "speculative" ).

### 3. Conclusion

The Court concludes based on the current record that neither thirty-day deadline under §

1446 was triggered in this case.  Rather, the removability of this case was not established until

Defendants conducted their own investigation to determine the likely amount of classwide

damages.   Under these circumstances, the Court concludes that under *Roth*, Defendants' removal

was timely.[14]

### C.     Whether the Amount-in-Controversy Requirement is Met

As a preliminary matter, the Court finds that Defendants did not meet their burden as to the

---

[14] The Court recognizes that defendants who remove under CAFA must "apply a reasonable amount of intelligence in ascertaining removability," even if they "need not make extrapolations or engage in guesswork." *Kuxhausen v. BMW Fin. Servs. NA LLC*, 707 F.3d 1136, 1140 (9th Cir. 2013) (quoting *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 206 (2d Cir.2001)).  Further, in determining whether the requirements for removal under CAFA have been met, "it is proper for courts to consider which party has access to or control over the records and information required to determine whether the amount in controversy requirement is met." *Garcia v. Wal-Mart Stores Inc.*, 207 F. Supp. 3d 1114, 1128 (C.D. Cal. 2016) (quoting *Letuligasenoa v. Int'l Paper Co.*, No. 5:13-CV-05272-EJD, 2014 WL 2115246, at *5 (N.D. Cal. May 20, 2014) and citing *Amoche v. Guarantee Trust Life Ins. Co.*, 556 F.3d 41, 51 (1st Cir.2009) ("In the course of [CAFA removal] evaluation, a federal court may consider which party has better access to the relevant information.")).  On the other hand, the Ninth Circuit in *Kuxhausen* made clear that under *Harris*, where a complaint is indeterminate, a defendant who removes under CAFA should not be "saddl[ed] . . . with the burden of investigating jurisdictional facts."  707 F.3d at 1139 (citing *Harris*, 425 F.3d at 693)).  Thus, in that case the court rejected the plaintiff's argument that removal was untimely because the defendant could have determined the amount in controversy by reviewing its own business records – something that it actually did after it received an indeterminate amended complaint.  *Id*. at 1141.  Here, there is no evidence in the records suggesting that Defendants actually knew the likely number of denied claims or the average amounts of the claims before they conducted a review of their own business records to determine whether the amount in controversy requirement was met.  Nor is there any evidence in the record that Defendants conducted such an investigation before Zhao filed his Motion.  *See* Benn Opposition Declaration (stating that Benn reviewed Defendants' records after the Motion to Remand was filed).  Therefore, the Court rejects Zhao's reliance on the fact that Defendants *could* have determined that the case was removable even on the basis of the initial complaint in support of his assertion that removal was untimely.

Notice of Removal as to the amount-in-controversy requirement. In the Notice of Removal, Defendants relied primarily upon their own information as to the amount of Zhao's individual economic losses, using this as a basis to extrapolate classwide damages and also to estimate punitive damages and attorneys' fees. Given the broad class definitions contained in both the initial complaint and the First Amended Complaint, which did not limit the classes to individuals whose vehicles were totaled (as was Zhao's), Defendants' reliance on Zhao's individual losses to estimate classwide economic losses does not give rise to a plausible estimate of classwide damages. *See Kearney v. Direct Buy Assocs., Inc*., No. CV1404965MMMAJWX, 2014 WL 12588636, at *9 (C.D. Cal. Oct. 23, 2014) ("As the removing party, Direct Buy 'is not entitled to assume that all class members' damages . . . are the same as the named plaintiff's based simply on an allegation that the named class member's claims are "typical."'") (quoting *Morris v. LiquidAgents Health* Care, LLC, No. 12–CV–4220 YGR, 2012 WL 5451163, *4 (N.D. Cal. 2012) (internal citations omitted)). Nor did Defendants offer any basis for their estimate as to the number of class members they used to show that the amount-in-controversy was met, instead simply working backwards from the $5 million requirement to determine how many class members would be required to support their estimates. In the absence of a plausible allegation of economic losses, Defendants' estimates of punitive damages and attorneys' fees in the Notice of Removal also fall short.

Nonetheless, Defendants have now offered additional grounds in support of CAFA jurisdiction in their Opposition brief, along with supporting evidence, which the Court deems to amend Defendants' Notice of Removal. *See Cohn v. Petsmart, Inc*., 281 F.3d 837, 840 (9th Cir. 2002) ("The district court did not err in construing Petsmart's opposition as an amendment to its notice of removal") (citing *Willingham v. Morgan*, 395 U.S. 402, 407 n. 3 (1969) ("it is proper to treat the removal petition as if it had been amended to include the relevant information contained in the later-filed affidavits"); 28 U.S.C. § 1653). The Court therefore must determine whether the additional arguments and evidence are sufficient to demonstrate that the amount-in-controversy requirement is met in this case. The Court concludes that they are not.

The Ninth Circuit has provided the following guidance regarding the determination of

24

whether the amount-in-controversy requirement is satisfied in an action that has been removed under CAFA:

> In determining the amount in controversy, courts first look to the complaint. Generally, "the sum claimed by the plaintiff controls if the claim is apparently made in good faith." *St. Paul Mercury Indem. Co. v. Red Cab Co*., 303 U.S. 283, 289, 58 S.Ct. 586, 82 L.Ed. 845 (1938) (footnote omitted). Whether damages are unstated in a complaint, or, in the defendant's view are understated, the defendant seeking removal bears the burden to show by a preponderance of the evidence that the aggregate amount in controversy exceeds $5 million when federal jurisdiction is challenged. *Rodriguez*, 728 F.3d at 981. In light of *Standard Fire*, 133 S.Ct. at 1350, this rule is not altered even if plaintiffs affirmatively contend in their complaint that damages do not exceed $5 million. *Rodriguez*, 728 F.3d at 981. The parties may submit evidence outside the complaint, including affidavits or declarations, or other "summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Singer v. State Farm Mut. Auto. Ins. Co*., 116 F.3d 373, 377 (9th Cir. 1997) (internal quotation marks omitted). Under this system, a defendant cannot establish removal jurisdiction by mere speculation and conjecture, with unreasonable assumptions.

*Ibarra v. Manheim Investments, Inc*., 775 F.3d 1193, 1197 (9th Cir. 2015)

In their Opposition, Defendants have set forth several components of potential damages to demonstrate that the amount-in-controversy requirement is met. The first is potential economic losses suffered by class members as a result of denied insurance claims. Defendants have submitted the Benn Opposition Declaration stating that they have denied over 3,000 claims, averaging approximately $1,200 each, giving rise to an estimated $3,600,000 in classwide economic losses. The Benn Declaration is not sufficient to meet Defendants' burden as to the amount in controversy, however, because Benn does not offer any specific facts demonstrating the basis for his personal knowledge or the specific records he reviewed to come up with the number of claims Defendants have denied or their average amounts. *See Garcia v. Wal-Mart Stores Inc*., 207 F. Supp. 3d 1114, 1121 (C.D. Cal. 2016) (holding that conclusory declaration by senior company employee stating that he had reviewed company records to determine the number of class members and amount in controversy lacked sufficient foundation and did not satisfy removing defendant's burden, noting by way of example that the declaration did "not describe with any particularity which records he reviewed to arrive at the figures he provides; whether he reviewed the personnel data himself or used summaries prepared by other employees; or when he

reviewed the records and completed his investigation"). Moreover, Defendants have not attached any of the underlying records that Benn describes in his declaration and therefore, the Court cannot rely on the records themselves as evidence of classwide economic losses. *See id.*

Defendants have also offered as evidence of economic losses certain NHTSA statistics as to the average amount of property damage from automobile collision in the United States in 2010. *See* RJN, Ex. A. These amounts offer no information about the amount of economic losses sought by Zhao, however, because his class claims seek damages only for insurance claims that were denied by Defendants. The NHTSA statistics do not provide any insight as to the losses experienced by individuals whose insurance claims were denied as opposed to those who obtained coverage for their losses. Therefore, reliance on these statistics to estimate the economic losses of the classes is speculative.

On the other hand, the Court rejects Zhao's assertion that class damages should be reduced on the basis that the class claims may be cut off after November 2015 because of the revised terms of service. This attempt to divest the Court of federal jurisdiction after the case has been removed by limiting his class definitions is not permissible. *See Broadway Grill, Inc. v. Visa Inc.*, 856 F.3d 1274, 1275 (9th Cir. 2017). Zhao expressly declined to include a date limitation in his First Amended Complaint, informing Defendants that he would prefer to have a judge decide the scope of the classes. Having intentionally defined his classes broadly, Zhao cannot now escape the consequences of that choice when it comes to the amount in controversy, even if Defendants may have a strong defense based on the November 2015 TOS.

Nor is the Court persuaded by Zhao's argument in his response to the Surreply that the cap on consequential damages contained in the RelayRides contract should be considered in determining the amount in controversy because the First Amended Complaint quoted the relevant policy language, including the exclusions. Docket No. 23-1 at 7-8 (citing FAC ¶ 75). The quoted language to which Zhao refers is contained within his Breach of Contract claim; it is not sufficient to demonstrate that Zhao was not seeking consequential damages based on his other claims, which are non-contractual and therefore would not necessarily be subject to these exclusions.

Second, Defendants have included an estimate of punitive damages of at least the same

26

amount as the projected economic losses discussed above. Punitive damages are properly considered in determining the amount-in-controversy where they are available. *Bayol v. Zipcar, Inc.*, No. 14-CV-02483-TEH, 2015 WL 4931756, at *9 (N.D. Cal. Aug. 18, 2015) ("Where both actual and punitive damages are recoverable under a complaint each must be considered to the extent claimed in determining jurisdictional amount.") (quoting *Bell v. Preferred Life Assur. Soc.*, 320 U.S. 238, 240 (1943)). Here, punitive damages are available on Zhao's bad faith claim under California Civil Code 3294. Further, under CAFA, the punitive damages of the class are aggregated. *Id.* The Court also finds that the ratio of 1:1 between punitive and economic damages used by Defendants is reasonable as it is a "conservative" ratio for purposes of calculating the amount in controversy. *Id.* (citation omitted). Nonetheless, to the extent that the amount of punitive damages is based on Defendants' estimate of economic losses, Defendants' estimate of punitive damages is speculative and therefore the Court does not consider it. *See Coren v. Mobile Entm't, Inc.*, No. C 08-05264 JF (PVT), 2009 WL 764883, at *2 (N.D. Cal. Mar. 19, 2009) (declining to consider estimate of punitive damages because "the amount of compensatory damages to which the class may be entitled [was] too speculative to be determined" and "[a]dding punitive damages to the equation only increases the speculation.").

Third, Defendants point to consequential damages based on possible missed work days, using median salary statistics for various counties in this District and an assumption that each class member could have missed a week of work, to estimate that each class member could have lost income in the neighborhood of $2,217 (though Defendants recognize this amount would vary because of regional variations in median income). *Id.* at 17-18. The Court finds these statistics to be entirely speculative, however, given that the class is not limited to individuals whose cars were totaled and Defendants' assumption that individuals whose claims were denied would not simply rent a vehicle to avoid missing work is not plausible. Defendants also cite Zhao's assertion in his February 10, 2017 letter that his own lost income totaled $14,668, arguing that this amount can be extrapolated because he alleges his claims are typical of the class members'. *Id.* at 22. The Court rejects that reasoning for the same reasons it does not accept Defendants' estimate of classwide economic losses based on denied claims, namely, that it is not reasonable to assume that each class

member's lost income will be the same as Zhao's given the broad definition of the class.

Similarly, Defendants' reliance on *Brandt* fees incurred by class members, that is, pre-litigation attorneys' fees incurred in connection with their denied insurance claims, is unavailing. Although the parties do not dispute that such fees are a component of economic loss that may be considered in determining the amount in controversy, the only evidence Defendants have offered relates to Zhao's pre-litigation attorneys' fees, which Zhao's counsel listed in his declaration filed in support of Zhao's request for fees in connection with the instant motion. Opposition at 22 (citing Henderson Decl. ¶ 17 (a)-(c)). In particular, tallying only the time devoted to pre-litigation tasks, Defendants conclude Zhao's *Brandt* fees amount to $6,080. *Id.* Apparently using the number of denied claims stated in the Benn Opposition Declaration to come up with a class of 3,000 individuals, and extrapolating based on Zhao's stated pre-litigation fees, Defendants contend "prelitigation *Brandt* fees alone could exceed the jurisdictional minimum." *Id.* There are two problems with this analysis. First, as discussed above, Defendants have offered no *admissible* evidence establishing by a preponderance of the evidence that there are approximately 3,000 class members. Second, even if they had, the assumption that class members incurred an average of $6,080 in *Brandt* fees is implausible as the classes include individuals whose insurance claims were less than this amount.[15] Therefore, the Court rejects Defendants' reliance on *Brandt* fees to establish the amount in controversy.

Finally, the Court concludes that Defendants' estimate of attorneys' fees is not sufficient to meet the amount-in-controversy requirement because it is calculated based on economic losses. Because Defendants have not met their burden as to those underlying losses, the Court also concludes that their estimate of attorneys' fees is speculative. The Court further notes that while there is a split of authority in this district, a growing number of district courts have concluded that the amount of future attorneys' fees is too speculative to consider when determining whether the

---

[15] Although the Court finds the Benn Opposition Declaration lacks sufficient foundation to consider, it notes that the numbers stated in it support the Court's conclusion to the extent that the average class members' insurance claim would have been for only $1,200. If that is the case, Defendants are asking the Court to assume that class members incurred almost three times the amount of their underlying losses in *Brandt* fees to obtain coverage of these claims

amount in controversy requirement has been met. *See Carranza v. Nordstrom, Inc*., 2014 WL 10537816, *17 n.99 (C.D. Cal. Dec. 12, 2014) (citing two cases where district courts included post-removal attorney's fees in calculating the amount in controversy and eight cases in which district courts declined to include future attorneys' fees). Further, as Judge Koh recently explained in *Gaasterland v. Ameriprise Fin. Servs.,* Inc., "even in those cases where courts have considered future attorney's fees in determining the amount in controversy, these courts have required defendants to provide a reasonably specific showing as to why a certain fee award is appropriate." No. 16-CV-03367-LHK, 2016 WL 4917018, at *10 (N.D. Cal. Sept. 15, 2016) (describing showing that was made in *Sasso v. Noble Utah Long Beach, LLC*, 2015 WL 898468, *5 (C.D. Cal. Mar. 3, 2015) and *Brady v. Mercedes-Benz USA, Inc*., 243 F. Supp. 2d 1004, 1011 (N.D. Cal. 2002)).

Here, Defendants have relied on the 25% benchmark amount that the Ninth Circuit has found to be reasonable in cases involving class action settlements. *See* Notice of Removal at ¶ 20 (citing *Fischel v. Equitable Life Assur. Soc'y of U.S*., 307 F.3d 997, 1006 (9th Cir. 2002) (addressing whether attorney fee award made in the context of a class action settlement was an abuse of discretion and noting that Ninth Circuit has "established a 25 percent 'benchmark' in percentage-of-the-fund cases that can be adjusted upward or downward to account for any unusual circumstances involved in [the] case.") (internal quotation and citation omitted)). A class action settlement, however, requires the court to assess the reasonableness of a fee award with reference to a case that is close to conclusion based largely on fees already incurred and an established amount of damages. In contrast, a court assessing future attorneys' fees at the time of removal, when a class action is in its early stages, does not have such information. Therefore, the Court concludes that it is not sufficient, in the context of CAFA removal, to rely on the 25% benchmark that is used to calculate attorneys' fees in the context of settlement or following trial; rather, even assuming that future attorneys' fees are properly considered when determining whether the amount in controversy is met, the amount of such fees must be supported by sufficient evidence to show that it is not speculative. Defendants have offered no such evidence and therefore, the

Court does not consider the attorneys' fees Defendants contend may be incurred in this action.[16]

For the reasons stated above, the Court concludes Defendants have not met their burden with respect to CAFA's $5 million amount-in-controversy requirement.

### D.    Whether Defendants Waived their Right to Remove

"It is well established that a defendant can make such affirmative use of the processes of a state court as to constitute waiver or estoppel of any right to remove to federal court. What acts legally constitute waiver is somewhat less clear." *California Republican Party v. Mercier*, 652 F. Supp. 928, 931 (C.D. Cal. 1986) (citing 1A J. Moore & B. Ringle, Moore's Federal Practice ¶ 0.157[9] (2d ed. 1986)).  However, "only clear and unequivocal waivers will defeat a party's right to remove to federal court." *Id.* (*Carpenter v. Illinois Central Gulf R. Co.*, 524 F. Supp. 249, 251 (M.D.La.1981)).  In this case, Defendants did not clearly and unequivocally waive their right to remove when they filed their motion to compel arbitration in California state court because at the time that motion was filed (in March 2017) Defendants apparently had not investigated the jurisdictional facts necessary to determine whether the case was removable.  To the extent that CAFA does not "saddle defendants" with the burden of conducting such investigation where a complaint is indeterminate, the Court also concludes that it would be inappropriate to find a waiver based on Defendants' continued litigation in state court prior to conducting their own investigation of the jurisdictional facts.  Accordingly, the Court finds that Defendants have not waived their right to remove this action to federal court.

### E.    Attorneys' Fees

Pursuant to 28 U.S.C. § 1447(c), "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." The Supreme Court has held that, "[a]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal. Conversely, when an objectively reasonable basis exists, fees should be denied."

---

[16] At most, the Court may consider the $298,280 in fees Zhao's counsel states that Zhao has incurred to date, listed in the Henderson Declaration, ¶ 17. *See Carranza*, 2014 WL 10537816, at *17.

*Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). The Court concludes that this case does not involve unusual circumstances and that while Defendants' have not met their burden at this point, their removal of this action was not objectively unreasonable. Therefore, the Court denies Zhao's request for attorneys' fees under § 1447(c).

## IV.     CONCLUSION

The Court concludes that although Defendants' removal of this action to federal court was timely, they have not demonstrated that the amount-in-controversy requirement is satisfied. The Ninth Circuit has held that under these circumstances, the parties should be permitted to "submit evidence outside the complaint, including affidavits or declarations, or other 'summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'" *Ibarra v. Manheim Investments, Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015) (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir.1997) (internal quotation marks omitted)). Accordingly, the Court DENIES without prejudice Zhao's Motion to Remand. The parties will be permitted to conduct limited discovery, for a period of 60 days from the December 8, 2017 motion hearing date, aimed at determining the amount in controversy based on the claims asserted in the First Amended Complaint. Zhao may file a renewed motion to remand on or before than **February 9, 2018**. Briefing and hearing dates shall be determined under the Civil Local Rules or pursuant to the parties' stipulation so long as the proposed hearing date is at least 35 days after February 9, 2018 and the final brief is submitted at least two weeks before the proposed hearing date.

**IT IS SO ORDERED.**

Dated: December 12, 2017

_____
JOSEPH C. SPERO
Chief Magistrate Judge